Case number 22-5330. Insider Inc. A Balance versus General Services Administration. Mr. Betwee for the A Balance, Ms. Myron for the Appellee. Good morning, Mr. Betwee. You may proceed when ready. Thank you very much. I think that's a good level there. Good morning, Your Honors. Thank you for your time and consideration this morning. The Presidential Transition Teams are instrumental in executing the statutory command to transition power from one administration to the next. And it's vital to our democracy that this transition happen in a way that's peaceful and efficient. Now the D.C. Circuit, excuse me, the D.C. District Court, not surprising, has recognized recently in American Oversight that knowing who participated in these transition efforts is squarely in the public interest, as contemplated by FOIA. It informs the public about what its government is up to. Now to GSA's credit, they have recognized this to an extent in releasing many of the names of the members of this team, but they've drawn an arbitrary line using what they admit is limited information, just arbitrary, excuse me, ambiguous job titles and salary information to dictate which names will inform the public and which won't. But Your Honors, there's no line here. These are small teams of individuals who were handpicked to do this important work. They all came directly from serving in the presidential administration. They all took these positions willingly, of course, and didn't have any, shouldn't have had any illusions that their involvement with the transition would be kept private. To the contrary, this work is very visible and very important to the functioning of our democracy. But the transition teams themselves are not governmental. That's correct, Your Honor. And that goes to drill down on what the public interest is here and understanding their activities. We acknowledge that there is sort of a gray area here where the transition teams do do some business that's unrelated to government activity, things like setting up the office for the former president, former vice president, but they also do duties and interact with government agencies that implicate what the government is up to. So they interact with the with GSA, of course. You know, in this particular transition, there's been a lot of reporting on their interaction with archives and whether documents got to the right place or were not returned. So they do. You all apparently agree that there is a private interest here. Is that correct? That's correct, Your Honor, though. So what's the specific public interest in actually knowing the names as opposed to the fact that there's been over 300 documents submitted and those documents tell you a little bit more about the activities of the actual transition team, which seems to be at the heart of the issue? Right. Thank you, Your Honor, for that question. What I would emphasize here is it's important to consider the derivative uses of these names. And this is something that didn't age with, you know, in a lot of these cases where a plaintiff is asking for names, whether that be a list of, you know, in Gilman, they were asking for names and addresses of people along where the border wall was going to be built. You know, these names, as the Gilman court recognized, they're just a starting point in a lot of cases. So, you know, it's a little bit to say, well, these names tell us nothing. Well, on their face, they might not. But that's the starting point for investigative reporters to... But what's the limit... Can you make a distinction between low level and high level persons in terms of their actual functions and responsibility with respect to the transition team? Well, I think it's perhaps not useful, very useful in this case to look merely at job duties. I mean, in the first place, I would say that GSA hasn't demonstrated that the job duties were low level. We don't know what the job duties were. But on top of that, every indication is that all of these team members had great exposure and access to those at the highest levels of government. Specifically, you know, I draw your attention to GSA made a and as we know from her January 6th commission testimony, she had intimate knowledge of the activities of the highest executives in the days leading up to January 6th. So this is my question, what is the limiting principle? Because the derivative use, you know, anyone who was that may reveal things about the archives, or GSA, you know, someone who is filing clerk could have derivative use, as you say, to a journalist. So on that reasoning, and could be very useful. So on that reasoning, the public interest always overcomes the privacy interest. And I'm skeptical that that's right. Sure. And I think we'd acknowledge that there is a line somewhere. I would posit that in this case, where we're over the line, because we're talking about people who didn't nearly, I mean, at least all indications are that they weren't just to use your example, filing papers, you know, these were people who were in direct communication with, you know, the president with his chief of staff, um, you know, the, but, but the question is, I think, in what role, and, you know, the government has said somebody like Cassidy Hutchison, who, you know, has publicly spoken as someone who followed and was interested in the events going on around her, well, that shifts her from being a more administrative person who's there to make things run to someone where the privacy interest wanes and the public interest outweighs. But they're just the fact that somebody is sort of witness to a lot of things that the public might want to know, seems to me on its own, unlikely to outweigh the privacy interest. Yeah, I do see, I mean, I do see what you're saying, Your Honor, I think, um, I do think that perhaps, perhaps, you know, I, I disagree with the idea that, you know, I think that there's being witness to something and there's being witness, you know, that, that in this case, we're talking about being witness to and participating in not just being witness to, but participating in and, and, and, and being influential, all indications are with people who are making the decisions. You know, and, and it also beyond just what they do, it says something that they were picked, for example. Well, but that's the transition team. So my other sort of question mark is about what will these individuals reveal? Not about the transition, which of course, the transition team's operations and, you know, may be very interesting to the public, but that's not the kind of public interest that FOIA speaks to, right? The public interest that FOIA speaks to is interest in the government's workings. And what would these individuals, contact with these wouldn't about the nature of GSA or the archives operations, if you could just be somewhat more concrete about that, that would help, it could help us think about it. Sure. So I think that goes to this idea maybe of incremental value of name. So the, the corporal referenced this in a case where, you know, I think that was dealing with immigration judges that they, that they acknowledge, well, there's an incremental value in knowing this information, but they still acknowledge that there was a value. And I think that because we're dealing with very small teams, you know, at this point, the people in the orbit of the president, former president and former vice president really whittled down to about, you know, in the case of the vice president 11, in the case of the president, 17 people, you know, the incremental value is greater because just by the nature of the fact that these are very small teams. Maybe you're backing into it and getting there, but my question is really about what is, what is it revealing about GSA or archives just examples, or sort of give us a feel for how people who are working on the transition team, what kinds of things they could reveal to the public about the workings of agencies simply based on their interactions with, or their colleagues interactions with those agencies in the context of transition. I just don't have a very concrete feel for what you're thinking about. Sure. I understand. So one could imagine, for example, a, a researcher who wants to do an in-depth study on transitions over time and who is chosen to carry out the transitions and why they're chosen, and certainly would help to understand, you know, who was chosen by this president. You know, one example would be, this wasn't an in-depth sort of look at the historical trends, but, but there was an article, I think in CNN where they talked about, oh, it's interesting that these particular transitions, they, they chose to spend a lot of money of their allotted budget on personnel versus, you know, space and equipment. You know, what does that tell us about how they're operating this transition? You know, one could imagine a study where they say, well, it's, you know, I think I mentioned this a little, you know, here are the people who they choose, chose this year, here are the people they chose this year, you know, what did, what positions did they have in administration and, you know, what positions do they have here? You know, the, it also kind of, you know, everybody's going to have an individual experience, of course, and, and so, you know, it sounds like you're getting to a very general public interest that would always be there. And so I'm, I'm with Judge Pillard in the sense of this limiting principle. I mean, is this a case-by-case analysis? What's the starting point from which we do that? Are there certain elements that we look at to get there? Because I feel like you, you're arguing just a general public interest in knowing, and that it just stops there. I would argue that there, there is, there's both a specific interest in knowing more about this transition team because of the interest in knowing who is on transition teams in general. So, so I wouldn't stop at the fact this particular transition is of interest. And, you know, I will also, yes, sorry. I mean, this is a third try on the same question, because you've talked about the public's interest in knowing who the transition team is staffed with. And I do think those are really interesting questions potentially revealing to, you know, newsreaders and the like. But my question was really about the governmental entities, the FOIA covered entities, and what the identities of, of these lower level transition team members could, as you put it, supports a transition team. And I don't get, I don't hear you saying that that particularly changes over time, that there was something notable about that in this administration, that these people, unlike their superiors on the transition, would have insights on the operation of government in supporting the transition teams. And I'm, so I just, I'm really looking for some, something less abstract about the kinds of things that public would be informed by that these individuals could provide, the kinds of information. Well, I'll also mention there's, there's another possibility here, which is that, you know, there's, there's been a lot of concern about transition teams and sort of ethical implications of who is included on them. And this is something that, you know, the American Oversight Court mentioned. This is something that, you know, Congress has addressed in strengthening the ethics requirements for transition teams. And obviously it's raised by various, you know, complications that have arisen in this particular transition. And so just as a who is on this team and generally, you know, to use the, you know, the sunlight is the best disinfectant to, that this is information that should be out there because the activities of this team, while they are not a government body, while they don't, while some of their activities don't relate to the government, a lot of what they do does relate to the government. And it relates to things that, you know, could implicate national security in certain cases, or it could implicate the functioning of the incoming administration. So even as just a general matter, making it public knowledge, you know, who are these people that are, that are carrying out this. The CSA does not pick who is actually on the team, the former president and vice president do. So again, back to this question of kind of this causal connection. Right. So I think there's an interest in understanding who the president and vice wanted to be on this team. Because, you know, in their brief GSA makes a distinction between, well, once they're out of office, they're not government officials anymore. But of course, they pick the team when they're still in office. And they decide, they shape, how is this transition going to look? Who do I want to bring with me from my office to do this transition work? And that might say a lot about how they envision the transition or how they intend for it to go. Is, are documents relating to that presidential choice subject to FOIA? So, so that's, that's, you raised a good point, Your Honor, which is that the president's, you know, their office is not subject to FOIA. But I'd point to Lardner, which was a case in this circuit. And in that case, it dealt with a list of pardon applicants, specifically pardon applicants who were unsuccessful. And one of the points that the, that the plaintiff in that case made is, is that, you know, knowing the names of these people who were denied clemency tells us something about what the executive was thinking about. And the court acknowledged this as a legitimate interest in government activity, even though the executives, any documents the executive created in it, deliberating on this would not be subject to FOIA. The court recognized that understanding that thought process through looking at this name, this list of names who denied clemency versus those who were granted it. Presumably that's sought by a FOIA to the office of the pardon attorney or someplace in justice. So it falls under FOIA as opposed to seeking directly from the White House. And here the effort is to seek from GSA, similarly to try to indirectly get at the information. You mentioned the ethics situation, but my understanding is that the, again, the former president and vice president are the enforcers of, of ethics on the teams, not, not the government. That's, that's true, Your Honor. And that's, isn't that by statute? Yes, that is. And that, that is absolutely true, Your Honor. And, and I think the interest is more in sort of making, you know, they are, they are watching the ethics, you know, they're self enforcing their ethics rules. And so I think it's certainly beneficial to the public to also have a policy matter. The public knows what GSA and archives and any other parts of the executive that are interacting with the transition team, what their role is in enforcing ethics on the transition team. And that is nothing. And so one could go forward with policy prescriptions and say, well, we should have some kind of ethics oversight and an inspector general or something else without knowing more about what the government is up to currently, because the statute tells us that they don't have a role. And that is, that could be instructive, but we know that without these names. Right. Right. Yeah. Yes. Further questions? No. Sorry. I know my time is long, long expired, but thank you. Now that you sought to reserve time for rebuttal. Yeah. One minute. Okay. Thank you. I'll give you that. Thank you. My name is Myron. Morning. You may proceed when you're ready. Morning. May it please the court, Laura Myron for GSA. The parties agree here that there's a substantial privacy interest at stake in the redaction of the individual's names who have been redacted from this GSA spreadsheet. The other side has articulated no public interest that would be served by knowing the particular names at issue here. And they've said admittedly that the public interest is in contacting these people, subjecting them to media inquiry, digging around in their background to determine whether there are any ethical concerns absent any evidence that such concerns would or wrongdoing would be found. And that underscores the strength of the privacy interest that's at issue here. That kind of fishing expedition just simply cannot outweigh a substantial privacy interest. And that is sufficient to resolve this case as the district court did. Although GSA did reveal the names of other staffers and they presumably would have the same privacy interests as the individuals whose names have been withheld. So if I could just walk through what GSA said in its declaration, what GSA did. So GSA said as a general starting point, all of these individuals have a privacy interest in this particular information. They also said that there's no asserted public interest in knowing what the government is up to that would be revealed by releasing this particular information. But for some individuals, their either role as a public figure or their voluntary disclosure of involvement with the transition or with the former president has diminished their privacy interest. And then for some people that their roles have changed that particular account. And the plaintiffs have suggested that there's a line drawing problem at issue here. Of course, the district court did not rely on that particular distinction and need not rely on it in order to continue to be redacted were properly withheld under exemption six. There's at a minimum, no suggestion that the redacted individuals names were high ranking officials of the transition team. Presumably GSA knows the nature of their roles and status. Yes, your honor. But I guess the point that I was suggesting is that even if you thought that GSA had not drawn the line in the right place, that that wouldn't compel the disclosure of information where there's no suggestion that they're at a minimum, not high ranking officials, and where there is a substantial privacy interest that would be further underscored by the fact that the plaintiffs asserted public interest is to contact these individuals to subject them to contact with any sensitive information. In other words, we're not want to draw lines by title or necessarily salary. But is there any other connection perhaps that would require these individuals to reveal? Plaintiff certainly hasn't articulated one, your honor. And again, they haven't articulated any reason to think that knowing the names of these individuals would reveal any information about the activities of the transition team, which, of course, aren't subject to FOIA. All of GSA's records and information that it has about its contact with the transition team has been released. I guess just to follow up on Judge Child's question, if the archives was seeking to recover and retain all presidential records and the out of office. And, you know, as we know from what's public about the Florida case, sometimes very low level people were involved in handling records that the archives have requested. So why is that in the context of this case, not enough to call for the disclosure of these names? Well, a couple of things, your honor. There's no, and plaintiff has certainly not been able to suggest in any way that knowing the names of these people alone would provide any information about the activities of the transition team. He's not saying alone. He's saying if we knew their names, we could find them. Sure. We could talk to them. And I think that, as I said, underscores the strength of the privacy interest at issue here, because what is at stake is the intention of both the plaintiff and I presumably other news and other organizations to contact these individuals who dig around in their background with the idea that they might be able to find something that is newsworthy. And this court and the Supreme Court have said that where the allegation is that you will uncover some wrongdoing by going on this kind of fishing expedition that you need to meet a very high standard to show that the information in question would in fact lead to support that investigation. They've admitted that they can't meet that standard and have suggested that because the transition team is not a government entity, that the standard applied by the court should be lower. And that seems exactly backwards. That GSA is in control of the information. And Judge Pillard was asking earlier about the tie the ask to GSA's case by case individual analysis as to what they should actually purport to give. To a certain extent, I think the answer is yes to that, Your Honor. I mean, Exemption 6 is a very fact specific application. You have to consider whether there's a privacy interest in the particular information and on the other side, what the public interest asserted by FOIA requester is. And then you have to conduct, assuming that there is a privacy interest at issue, a balancing as the district court did and conclude that that public interest is strong enough to outweigh a privacy interest. And that is a fact specific and case specific question. Here, there's certainly no asserted public interest that would outweigh the substantial privacy interest that there has been a lot of attention paid to this transition. And that particularly where there's no, they haven't been able to point to any particular information that they're hoping to gather from contacting these individuals or investigating into their background. And, you know, as I said, you know, this court has set for the standard for when you intend to check up the government's work or things like that. And they have admitted that they cannot. How are you distinguishing this from SIM? Well, two things, Your Honor. First, in SIMs, the primary holding of the court is that the records in question are not subject to Exemption 6. And so that's not applicable here. Parties agree that Exemption 6 does apply. But I think the sort of question of, you know, what about, you know, is this similar to the expenditure of federal dollars? Usually when there's a FOIA request concerning information regarding the expenditure of federal funds, because the federal government has an interest in, you know, obligations in ensuring that the spending of those funds is done either in connection with statutory and regulatory obligations, or whether, you know, the entity in question is carrying out a function of the government in the government's stead. You don't have any of those circumstances here. The transition team is expressly by statute, not a government entity. The employees in question are not subject to disclosure, financial disclosure, any requirements that government employees are. In answering Judge Child's question, I wasn't sure that I heard it. I thought you mentioned the content of the FOIA request. And the FOIA request here was framed as seeking information about government expenditures. Does that have any role in the nature of the public interest that we consider, or is the public interest on, is there no requirement of any nexus to that, to the original request when we're assessing the public interest? Well, I think, Your Honor, it demonstrates that they've asked for information related to GSA expenditures, and GSA has released, you know, all of the information that it has in its records related to its activities, its expenditures, you know, the money that was being appropriated for this purpose. The GSA has also, you know, outside the context of this FOIA request, released lots of information about its, you know, connection to the transition team related to this particular transition on its website and other places. And so the question before this court, and the question on which the district court correctly affirmed the withholding, is whether there is a substantial privacy interest in the particular redacted information, which here is the names of these individuals in this particular spreadsheet, and whether that is outweighed by an asserted public interest. And plaintiff has been unable to articulate an asserted public interest in this information that would outweigh the substantial privacy interest. I'm not sure you answered my question, which is what is the government's position and what is the law on whether we evaluate the public interest in any way, any public interest in information, or is there any role or limitation that's imposed on our assessment of potential public interest by the fact that what they originally saw was expenditure information? And I think the answer is there's no nexus requirement, no limitation, but I just wanted your answer on that. No, I don't think there's a nexus requirement, you know, particularly between the FOIA request and the asserted public interest at the point that you're considering the appropriateness of the redaction, but there certainly is a nexus requirement between the asserted public interest of the FOIA requester and the Exemption 6 consideration, because you have to consider what they're saying, that their intent to do with the information, what that information will reveal about what the government is up to, and it is not the job of the court to see if it can come up with any public interest it can imagine that would be served by the disclosure of the information. Thank you, Your Honor. We ask the Court affirm. Mr. Betway, we held you up here with lots of questions, but we will give you the one minute. Thank you, Your Honor. I just briefly want to touch on the privacy interest because, of course, it's a Wayne test, and it's important to remember in making this determination that the privacy interest here is quite low. I mean, because of the case law that sets the bar extremely low, the fact that there are names involved basically means Exemption 6 is in play, but when you look at the information that's being released here, we're talking about knowing the name and that they were on the transition team and some limited salary information, and that's it. There's not any address information. There's not any contact information, which is usually the case in most of the cases that are cited here. So the information that's being released is very, very limited and really not, as the Sims Court said, not the type of information that was meant to be shielded from the public. The public certainly isn't interested in knowing the names of those entering into a contract with the government, which is what is happening here. I also want to just... I see my time has expired, so I'll wrap up there, Your Honor, but thank you very much for your consideration. Thank you both. The case is submitted.
judges: Pillard, Childs, Edwards